UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WILLIE J. BROOKS,

               Petitioner,

v.                             Case No. 3:13-cv-221-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

               Respondents.
_____

## **ORDER**

### **I. Status**

Petitioner Willie J. Brooks, an inmate of the Florida penal system, initiated this action on February 28, 2013, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. Brooks filed an Amended Petition (Amended Petition; Doc. 9) on October 4, 2013. In the Amended Petition, Brooks challenges a 2008 state court (Columbia County, Florida) judgment of conviction for sale or delivery of cocaine and possession of cocaine with intent to sell or deliver. Respondents have submitted a memorandum in opposition to the Amended Petition. See Respondents' Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response; Docs. 16, 17) with exhibits (Resp. Ex.). On November 15, 2013, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 11), admonishing Brooks

regarding his obligations and giving Brooks a time frame in which to submit a reply. Brooks neither submitted a reply nor requested additional time to do so. This case is ripe for review.

## II. Procedural History

On February 26, 2008, in Case No. 07-0415-CF, the State of Florida charged Brooks with sale or delivery of cocaine (count one) and possession of cocaine with intent to sell or deliver (count two). Resp. Ex. A at 53-55, Amended Information. In May 2008, Brooks proceeded to trial, see Resp. Ex. C, Transcript of the Jury Trial (Tr.), at the conclusion of which, on May 8, 2008, a jury found him guilty of sale or delivery of cocaine and possession of cocaine with intent to sell or deliver, as charged. Id. at 132-33; Resp. Ex. A at 133, Verdict. On July 16, 2008, the court sentenced Brooks to a term of imprisonment of fifteen years for count one, and a term of imprisonment of fifteen years for count two, such terms to run concurrently with each other. Resp. Exs. A at 184-89, Judgment; B, Transcript of the Motion for New Trial and Sentencing Proceedings (Sentencing Tr.).

On direct appeal, Brooks, with the benefit of counsel, filed an initial brief, arguing that the circuit court erred when it adjudicated him guilty and sentenced him for both sale of cocaine and possession of the same quantum of cocaine with intent to sell in violation of the double jeopardy clause. Resp. Ex. D. The State filed an answer brief. See Resp. Ex. E. On July 22, 2009, the

appellate court affirmed Brooks' convictions per curiam without issuing a written opinion. See Brooks v. State, 12 So.3d 754 (Fla. 1st DCA 2009); Resp. Ex. F. The mandate issued on August 7, 2009. See Resp. Ex. G.

On March 4, 2010, Brooks filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion). Resp. Ex. H at 1-34. In his request for post-conviction relief, Brooks asserted that counsel was ineffective because he failed to: investigate, depose and call three witnesses (Pat Roberts, David Allen and Kenny Tote) at trial (ground one); inform him of "a lenient plea offer" made by the State Attorney's Office that would have resulted in a term of incarceration of six months in the county jail followed by seven years of probation (ground two); file a motion in limine to exclude the testimony and evidence of a twenty-dollar bill (ground four); object to the prosecutor's remarks in closing argument (ground five); impeach and effectively cross examine Michael Murphy, the State's key witness (ground six); and object to the videotape introduced at trial and move for a mistrial to preserve the issue for appellate review (ground seven). Additionally, Brooks asserted that counsel was ineffective because he made "an insufficient boilerplate motion for judgment of acquittal" (ground three), and the trial court erred when it sentenced him as a habitual felony offender (ground eight). See id. Following a May 12, 2011

evidentiary hearing, <u>see</u> Resp. Ex. J, Transcript of the Evidentiary Hearing (EH Tr.), the court denied the Rule 3.850 motion on June 21, 2011, <u>see</u> Resp. Ex. I at 108-24.

Brooks filed a notice of appeal on July 22, 2011, pursuant to the mailbox rule. Resp. Ex. K. The appellate court directed Brooks to show cause why the appeal should not be dismissed as untimely. Resp. Ex. L. When the appellate court did not receive a response from Brooks, the court dismissed the appeal as untimely on September 8, 2011. Resp. Ex. M. Brooks later filed a response to the order to show cause and a motion for rehearing/reconsideration. Resp. Exs. N; O. On November 16, 2011, the appellate court per curiam dismissed Brooks' appeal as untimely without prejudice to file a motion for belated appeal. <u>See</u> <u>Brooks v. State</u>, 77 So.3d 213 (Fla. 1st DCA 2011); Resp. Ex. P. The mandate issued on February 7, 2012. <u>See</u> Resp. Ex. Q.

On December 2, 2011, Brooks filed a pro se petition for writ of habeas corpus seeking a belated appeal of his post-conviction motion. Resp. Ex. R. The appointed Special Master recommended that Brooks be afforded a belated appeal. Resp. Ex. S. On March 22, 2012, the appellate court per curiam granted Brooks' petition seeking a belated appeal. <u>See</u> <u>Brooks v. State</u>, 82 So.3d 1210 (Fla. 1st DCA 2012); Resp. Ex. T. The mandate issued on April 17, 2012. <u>See</u> Resp. Ex. U.

On June 11, 2012, Brooks filed a pro se initial appellate brief, addressing grounds one through seven, and conceding ground

4

eight. Resp. Ex. Y. The State filed a notice that it did not intend to file an answer brief. Resp. Ex. Z. On November 20, 2012, the appellate court affirmed the trial court's denial per curiam without issuing a written opinion, see <u>Brooks v. State</u>, 101 So.3d 841 (Fla. 1st DCA 2012); Resp. Ex. AA, and the mandate issued on December 18, 2012, see Resp. Ex. BB.

During the pendency of Brooks' appeal of the circuit court's denial of his Rule 3.850 motion, he filed a Motion to Correct Illegal Sentence and Emergency Petition for Writ of Habeas Corpus (Rule 3.800 motion) pursuant to Florida Rule of Criminal Procedure 3.800(a) on September 26, 2011. Resp. Ex. CC at 1-11. In his Rule 3.800 motion, he asserted that his sentence is illegal because Florida Statutes section 893.101 is facially unconstitutional. The trial court denied the motion on December 12, 2011. <u>Id.</u> at 12-14. On appeal, he filed an initial brief, see Resp. Ex. DD, and the State filed a notice that it did not intend to file an answer brief, see Resp. Ex. EE. The appellate court affirmed the circuit court's denial per curiam on May 4, 2012, see <u>Brooks v. State</u>, 90 So.3d 835 (Fla. 1st DCA 2012); Resp. Ex. FF, and later denied Brooks' motion for rehearing on July 5, 2012, see Resp. Ex. GG. The mandate issued on July 23, 2012. <u>See</u> Resp. Ex. HH.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

5

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Brooks' claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

6

> determined by the Supreme Court of
> the United States; or
>
> > (2) resulted in a decision that
> > was based on an unreasonable
> > determination of the facts in light
> > of the evidence presented in the
> > State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has
> adjudicated the petitioner's claim on the
> merits, a federal court may not grant habeas
> relief unless the state court's decision was
> "contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States," 28 U.S.C. § 2254(d)(1), or
> "was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding," id. §
> 2254(d)(2). "Under § 2254(d)(1)'s 'contrary
> to' clause, we grant relief only 'if the state
> court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question
> of law or if the state court decides a case
> differently than [the Supreme Court] has on a
> set of materially indistinguishable facts.'"
> Jones v. GDCP Warden, 753 F.3d 1171, 1182
> (11th Cir. 2014) (quoting Williams v. Taylor,
> 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d
> 389 (2000)). "Under § 2254(d)(1)'s
> 'unreasonable application' clause, we grant
> relief only 'if the state court identifies the

7

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. <u>White v. Woodall</u>,- U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." <u>Woodall</u>, 134 S.Ct. at 1702 (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); <u>accord</u> <u>Richter</u>, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and <u>Strickland</u>, our review is doubly deferential. <u>Richter</u>, 131 S.Ct. at 788 ("The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must establish that no fairminded jurist would have reached the Florida court's conclusion. <u>See</u>

> Richter, 131 S.Ct. at 786-87; Holsey v.
> Warden, Ga. Diagnostic Prison, 694 F.3d 1230,
> 1257-58 (11th Cir. 2012). "If this standard is
> difficult to meet, that is because it was
> meant to be." Richter, 131 S.Ct. at 786....

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th Cir. 2014), cert. denied, 135 S.Ct. 2323 (2015); see also Hittson v. GDCP Warden, 759 F.3d 1210, 1230 (11th Cir. 2014), cert. denied, 135 S.Ct. 2126 (2015).

For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Hittson, 759 F.3d at 1232 ("[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); Richter, 562 U.S. at 100 (holding and reconfirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'"); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Brooks' claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense

counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S.Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be

satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

The United States Supreme Court has long recognized that Strickland's two-part inquiry applies to ineffective assistance of counsel claims arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52 (1985). In 2012, in companion decisions in Missouri v. Frye, 132 S.Ct. 1399 (2012), and Lafler v. Cooper, 132 S.Ct. 1376 (2012), the Supreme Court clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam) (footnote omitted). In Lafler, the Supreme Court articulated a three-part test to prove prejudice in the context of a foregone guilty plea.

> In contrast to Hill, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of

11

intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

132 S.Ct. at 1385; see Frye, 132 S.Ct. at 1409; Gissendaner v. Seaboldt, 735 F.3d 1311, 1317-19 (11th Cir. 2013), cert. denied, 135 S.Ct. 159 (2014).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S.Ct. at 788.

Hittson, 759 F.3d at 1248; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are

considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Brooks asserts that the state court "committed fundamental error" when it adjudicated him guilty and sentenced him for both sale of cocaine and possession of the same quantum of cocaine with intent to sell. Amended Petition at 4. Brooks argued this issue on direct appeal, <u>see</u> Resp. Ex. D at 6-9, and the State filed an answer brief, <u>see</u> Resp. Ex. E at 3-4. Ultimately, the appellate court affirmed Brooks' convictions and sentences per curiam without issuing a written opinion. <u>See</u> <u>Brooks</u>, 12 So.3d 754; Resp. Ex. F.

In its appellate brief, the State addressed the claim on the merits, <u>see</u> Resp. Ex. E at 3-4, and therefore, the appellate court may have affirmed Brooks' conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor

was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Brooks is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, Brooks' claim is, nevertheless, without merit. Under Florida law, convictions and sentences for sale and possession of the same quantum of cocaine do not violate the Double Jeopardy Clause because the greater offense of sale of a controlled substance does not necessarily include possession; each crime includes an element that the other does not. See State v. McCloud, 577 So.2d 939, 941 (Fla. 1991) (per curiam) (citing Fla. Stat. § 775.021(4)(b) (Supp. 1988)); Seward v. State, 937 So.2d 767 (Fla. 5th DCA 2006) (holding that convictions for sale of cocaine and possession of cocaine with intent to sell or deliver did not violate prohibition against double jeopardy). Consequently, there was no double jeopardy violation, and therefore, Brooks is not entitled to federal habeas relief on ground one.

## B. Ground Two

As ground two, Brooks asserts that counsel (Assistant Public Defender Joseph Gerard Wirth) was ineffective because he failed to investigate and call three witnesses (Pat Roberts, David Allen and Kenneth Tote) at trial. Brooks raised the ineffectiveness claim in his Rule 3.850 motion, as ground one, in state court, and the

circuit court held an evidentiary hearing concerning this issue.[1]
Identifying the two-prong Strickland ineffectiveness test as the
controlling law, the post-conviction court denied the Rule 3.850
motion with respect to this claim, stating in pertinent part:

> In the instant motion, the Defendant
> alleges that his trial counsel was ineffective
> for failing to investigate and depose three
> witnesses: Pat Roberts, David Allen, and Kenny
> Tote. The Defendant claims that each of these
> witnesses would have testified that the
> Defendant "never sold Michael Murph[y] crack
> cocaine and that the police officer [sic] the
> gum container in his hand not Defendant."
> Motion at 7. The Defendant further claims that
> he suffered prejudice because the testimony of
> these three potential witnesses "would have
> impeached the States [sic] witness Michael
> Murphy." Motion at 8.
>
> This Court determined that it was unable
> to rule on the merits of this ground without
> an evidentiary hearing. Therefore, an
> evidentiary hearing was held on May 12, 2011.
> At said hearing, the Defendant claimed that
> there were four potential witnesses that he
> made his trial counsel aware of (David Allen,
> Gloria Brooks (she was not originally
> mentioned in the Defendant's motion), Kenneth
> Toot, and Patricia Roberson). Evidentiary
> Hearing Transcript at 6.[[2]] The Defendant
> claimed that he made his trial counsel aware
> of these witnesses while he was in jail.
> Evidentiary Hearing Transcript at 7. The
> Defendant's trial counsel disagrees: "I

---

[1] Any claim that Brooks was not provided counsel during the Rule 3.850 proceeding, see Amended Petition at 5, is unfounded. Mr. Clifton Wilson represented Brooks at the state court evidentiary hearing. See EH Tr. at 1,2; Resp. Ex. H at 83-84, Order Setting Evidentiary Hearing on Post-Conviction Motion (appointing counsel to represent Brooks), filed February 22, 2011.

[2] See EH Tr. at 6.

remember him talking about Mr. Allen. In fact, he brought Allen to our office and I was able to interview him. Other witnesses I don't recall him mentioning any other names to me as being potential witnesses in the case." Evidentiary Hearing Transcript at 35. The Defendant's trial counsel explained exactly how he handles any potential witnesses that his clients inform him of:

> POST-CONVICTION COUNSEL: Mr. Wirth, as far as the witnesses, or lack thereof, that Mr. Brooks gave you, what do you normally do when somebody gives you witnesses?

> TRIAL COUNSEL: If I have a good address, I'll simply prepare a discovery disclosure and file it with the clerk  and send a copy to the State. If I don't have addresses or if I just have a phone number, I work with one of my investigators to try to track down a person, get an address so that we could disclose them and get at least a brief statement from them.

> POST-CONVICTION COUNSEL: Okay. So if he gives you an address and a name, then that's somebody you immediately disclose?

> TRIAL COUNSEL: Correct.

> POST-CONVICTION   COUNSEL:   Do   you always do that?

> TRIAL COUNSEL: Yes, sir.

Evidentiary Hearing Transcript at 45. In addition to describing what he would have done if the Defendant had made him aware of any potential witnesses, the Defendant's trial counsel explained that one of the witnesses, Mr. David Allen, was brought to his attention by the Defendant.

16

> STATE: Okay. Let me talk specifically now, Mr. Wirth, if you don't mind, about the allegation that Mr. Brooks provided you with, at one point was three names, now appears to be four names. What do you recall regarding a conversation w[hen] Mr. [Brooks] asked you to look for some witnesses to investigate his case?
>
> . . . .
>
> TRIAL COUNSEL: I remembered [sic] him talking about Mr. Allen. In fact, he brought Allen to our office and I was able to interview him. Other witnesses I don't recall him mentioning any other names to me as being potential witnesses in this case.
>
> . . . .
>
> STATE: Can you please check your notes and see if you have any notes regarding any other names other than Mr. David Allen? (Brief pause in proceedings while witness refers to his file)
>
> TRIAL COUNSEL: No, Mr. Allen was the only person I was told was nearby and could [have] seen what was going on.

Evidentiary Hearing Transcript at 35-36. The Defendant's trial counsel, in fact, deposed Mr. Allen. Evidentiary Hearing Transcript at 37. However, the Defendant's trial counsel did not call Mr. Allen as a witness at the Defendant's trial:

> STATE: All right. And, Mr. Wirth, did you call that witness [Mr. Allen] as a - on behalf of the defense in the trial for Willie Brooks?

TRIAL COUNSEL: No, I didn't.

STATE: And why did you decide not to call him?

TRIAL COUNSEL: He had claimed that he didn't see the CI [(confidential informant)] at the house on the day that the sale was alleged to have taken place. However he was mistaken by the CI's race.

STATE: He was mistaken about the race?

TRIAL COUNSEL: Yes.

STATE: Okay. What was the race of the CI in this case?

TRIAL COUNSEL: He was white.

STATE: And during deposition what did he say that the supposed Michael Murphy that he knew, what race was that person?

TRIAL COUNSEL: He said he was black.

STATE: Okay. Was -- other than the race, was Mr. Allen certain as to the date and the facts as Mr. Brooks had conveyed them to you?

TRIAL COUNSEL: No. He -- his description of it was a little confusing. He talked about Spurlock coming there and walking around his house. Walking around Mr. Brooks['s] house. And at one point he said Mr. Brooks isn't there. And at another time Mr. Brooks is sitting there. And it didn't match up with what I was told. That and along with Mr. Allen's prior convictions, at least the ones that he told us about.

STATE: Okay. Did you discuss with Mr. Brooks, your client in this case, the testimony that David Allen had provided you at deposition?

TRIAL COUNSEL: May I refer to my notes?

STATE: Sure.

TRIAL COUNSEL: I believe I did, but I didn't document it.

STATE: Okay. And the best that you can recall was there -- was that a strategic decision that you made not to call that witness?

TRIAL COUNSEL: Yes.

STATE: And what was the reasoning behind not calling Mr. Allen?

TRIAL COUNSEL: I think the mistake as to the CI's race would have been something to impeach him on at trial and it would have lost a good deal of credibility. And if Mr. Brooks had decided to take the stand it would have conflicted with his own testimony.

. . . .

STATE: How about the convictions that Mr. Allen said that [he] had been convicted of?

TRIAL COUNSEL: He had at least two felonies that he mentioned to us in depositions.

STATE: And were you concerned that, once again, how the jury would see a witness like that even if Mr. Brooks didn't take the stand that the jury would now know that he was

19

associating or with persons that
were convicted?

TRIAL COUNSEL: Yes. And Mr. Allen
wasn't certain as to his convictions
exactly what they were for, if they
had been pled down, and any mistake
on that would bring to light the
specific charges that he would have
had in his history.

Evidentiary Hearing Transcript at 37-40. Based
on the above discussion, this Court finds that
the Defendant's trial counsel clearly
investigated Mr. David Allen and his potential
testimony and made a strategic decision not to
call him as a witness. "Strategic decisions of
counsel will not be second-guessed on
collateral attack." Wilson v. Wainwright, 474
So. 2d 1162, 1163 (Fla. 1985). Therefore, the
Defendant's trial counsel was not ineffective
with regard to this specific allegation-
failure to investigate and call Mr. David
Allen.

Next, this Court will address the second
witness mentioned at the hearing, Gloria
Brooks. . . . However, assuming arguendo that
the Defendant had properly pled Gloria Brooks
as a potential witness, his trial counsel
would not have been ineffective for failing to
call her. As the Defendant admits, Mrs.
Brooks, the Defendant's wife, was not present
at the scene during the alleged sale of
cocaine.

STATE: And then Gloria Brooks?

DEFENDANT: I called her and told her
over the phone what was going on,
Pete Spurlock standing in my yard
with dope in his hand, saying it's
mine, in a blue container.

STATE: And Mr. Brooks, since you
called her on the phone, where was
she as far as you know?

DEFENDANT: She was home.

STATE: Do you use your cellular phone to call her?

DEFENDANT: Yes, ma'am, I did.

STATE: Or did you use David Allen's phone?

DEFENDANT: I don't use other people's phones. I have my own.

STATE: Okay. So the best of your understanding Gloria Brook[s] is at your home, your [sic] over –

DEFENDANT: No, she wasn't at my home, she was at her home.

STATE: Okay. So would Ms. Brooks have seen Mr. Spurlock --

DEFENDANT: Pete Spurlock.

STATE: – from where she was?

DEFENDANT: No. She can't see him from Lake Butler.

Evidentiary Hearing Transcript at 27-28. Accordingly, Gloria Brooks was not present prior to or during the alleged sale and would not have been able to present any eyewitness testimony of any value. Accordingly, even if the Defendant had made his trial counsel aware of her existence and properly included her in his 3.850 motion, the Defendant's trial counsel's behavior would still not have amounted to ineffective assistance of counsel for failure to call Gloria Brooks as a witness.

Finally, regarding the final two witnesses, Kenneth Tote and Pat Roberts, this Court agrees with the Defendant's post-conviction counsel, there is "a conflict in the testimony." Evidentiary Hearing

> Transcript at 58. The Defendant steadfastly maintains that he informed his trial counsel of three (or four) potential witnesses. The Defendant's trial counsel disagreed and recalled only being made aware of Mr. David Allen. The Defendant's trial counsel further explained exactly what he would have done if the Defendant had made him aware of any additional potential witnesses. As the Defendant's trial counsel properly investigated and deposed Mr. David Allen, and there is no reason to doubt whether he would have done the same with additional potential witnesses, and the Defendant's trial counsel's notes failed to reflect that he was made aware of the additional potential witnesses, this Court finds that the Defendant's trial counsel was not made aware of any additional witnesses by the Defendant. If a trial counsel is not advised by his or her client of the existence of any potential witnesses, trial counsel cannot be ineffective for failing to call them at trial. Accordingly, the Defendant's trial counsel was not ineffective with regard to Ground One. Ground One is DENIED.

Resp. Ex. I at 109-13 (emphasis deleted). On Brooks' appeal, the appellate court affirmed the trial court's denial per curiam. See Brooks, 101 So.3d 841; Resp. Ex. AA.

Given the record in the instant action, the appellate court may have affirmed the denial of Brooks' motion for post-conviction relief on the merits. If the appellate court addressed the merits, Brooks would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve

an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brooks is not entitled to relief on the basis of this claim.

Moreover, even assuming that the appellate court did not affirm the denial of the post-conviction motion on the merits or that the state courts' adjudications of the claim are not entitled to deference under AEDPA, Brooks' ineffectiveness claim is still without merit. The record supports the trial court's conclusion. After the evidentiary hearing in state court concerning this issue, the circuit court resolved the credibility issue in favor of believing counsel's testimony over that of Brooks. See Resp. Ex. I at 112-13; EH Tr. at 58. The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Here, Brooks has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, Brooks' claim is wholly unsupported, and therefore must fail.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of

competence. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014), cert. denied, 135 S.Ct. 1483 (2015). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Brooks must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward v. Hall, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Brooks has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. As the Eleventh Circuit has recognized, "[t]here is much wisdom for trial lawyers in the adage about leaving well enough alone." Waters, 46 F.3d at 1512. Counsel's decision as to "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the court] will seldom, if ever, second guess." Id.; Chandler v. United States, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000) (describing the decision to call some witnesses and not others as "the epitome of a strategic decision" (quotation marks and citation omitted)). Moreover, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991).

Even assuming arguendo deficient performance by defense counsel, Brooks has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had investigated and called David Allen, Gloria Brooks, Pat Roberts and Kenneth Tote as witnesses at trial. Brooks' ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

Accordingly, Brooks is not entitled to federal habeas relief on ground two.

## C. Ground Three

As ground three, Brooks asserts that counsel was ineffective because counsel failed to inform Brooks of "a lenient plea offer" made by the State that would have resulted in a term of incarceration of six months in the county jail followed by seven years of probation. See Amended Petition at 6. Brooks raised the ineffectiveness claim in his Rule 3.850 motion, as ground two, in state court, and the circuit court held an evidentiary hearing concerning this issue. Ultimately, the post-conviction court denied the Rule 3.850 motion with respect to this claim, stating in pertinent part:

> In Ground Two, the Defendant claims that his trial counsel was ineffective because he failed to inform the Defendant that the State Attorney's Office had offered a "lenient plea offer of six (6) months County Jail time followed by seven (7) years probation." Motion at 9. The Defendant claims that his trial counsel failed to communicate this offer to him and, had it been properly conveyed, the Defendant would have accepted the lesser offer.
>
> The Defendant relies on the following brief excerpt from the Motion for New Trial and Sentencing Proceedings Transcript to show that a plea offer was made by the State:
>
> TRIAL COUNSEL: [The Defendant] was previously extended the offer of seven years of probation and six months of county jail. (Motion for

26

New Trial and Sentencing Proceedings
Transcript at 7.).[3]

. . .

STATE:   Your   Honor,   the   Defense
argued, I guess, that at some point
the  State  had  offered  probation,
therefore,    Your    Honor    should
consider  that.  I  just  want  to
clarify  to  the  Court  that  at  the
time  that  that  offer  was  made  that
was  before  the  new  charges  came  up.
(Motion for New Trial and Sentencing
Proceedings Transcript at 10.)[4]

This   Ground   was   argued   during   the
evidentiary   hearing.   Again,   there   is   a
conflict   in   the   testimony:   when   the
Defendant's   post-conviction   counsel   asked
whether  his  trial  counsel  "ever  talk[ed]  to
[him]  about  a  plea  offer,"  the  Defendant
responded,  "If  he  did  I  don't  know  nothing
about  it."  (Evidentiary  Hearing  Transcript  at
11);   while   the   Defendant's   trial   counsel
testified  that  he  recalled  conveying  the  plea
offer  to  the  Defendant  and  that  the  Defendant
"said  that  he  didn't  do  it,  and  he  wasn't
taking   any   offers."   Evidentiary   Hearing
Transcript at 40.

Once  again,  this  Court  faces  a  conflict
in  the  testimony  and  must  determine  whether
the  Defendant's  trial  counsel  made  him  aware
of  the  State's  plea  offer.  After  a  careful
review  of  the  court  record  and  the  transcript
from  the  evidentiary  hearing,  this  Court  finds
that   the   Defendant's   trial   counsel,   in
accordance   with   his   testimony   during   the
evidentiary  hearing,  informed  the  Defendant
about  the  plea  offer  and  that  the  Defendant
refused  to  accept  that  offer.  This  is  further

---

[3] See Sentencing Tr. at 7.

[4] See Sentencing Tr. at 10; EH Tr. at 40-41; Resp. Ex. A at
99.

> supported by the Defendant's claim, in both
> his 3.850 motion and at the evidentiary
> hearing, that the first time he had heard of
> any plea offer by the State was when a "law
> clerk" in prison pointed out to him the brief
> discussion in the Motion for New Trial and
> Sentencing Proceedings Transcript.[5] Contrary
> to the Defendant's claim, the State pointed
> out during its closing argument at the end of
> the evidentiary hearing that the Defendant was
> present during his sentencing hearing when the
> plea offer was briefly referred to by the
> Defendant's trial counsel and again mentioned
> by the State. Evidentiary Hearing Transcript
> at 63. As such, this Court finds that the
> Defendant was informed of the plea offer by
> his trial counsel. Therefore, the Defendant's
> trial counsel's conduct regarding Ground Two
> was not ineffective. Ground Two is DENIED.

Resp. Ex. I at 113-14 (emphasis deleted). On appeal, the appellate

court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial on the

merits, the Court considers this claim in accordance with the

deferential standard for federal court review of state court

adjudications. After a review of the record and the applicable law,

the Court concludes that the state courts' adjudications of this

claim were not contrary to clearly established federal law, did not

involve an unreasonable application of clearly established federal

law, and were not based on an unreasonable determination of the

facts in light of the evidence presented in the state court

proceedings. Thus, Brooks is not entitled to relief on the basis of

this claim.

---

[5] See Sentencing Tr. at 11-12.

Moreover, even assuming that the appellate court did not affirm the denial of the post-conviction motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Brooks' ineffectiveness claim, nevertheless, is without merit. The record fully supports the trial court's conclusion. After the evidentiary hearing in state court concerning this issue, the circuit court resolved the credibility issue in favor of believing counsel's testimony over that of Brooks. See Resp. Ex. I at 113 (stating "this Court finds that the Defendant's trial counsel, in accordance with his testimony during the evidentiary hearing, informed the Defendant about the plea offer and that the Defendant refused to accept that offer"). Here, Brooks has not rebutted the trial court's credibility finding by clear and convincing evidence. Given the trial court's credibility determination, Brooks' claim is wholly unsupported, and therefore must fail.

As previously discussed, the United States Supreme Court held that defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms that may be favorable to the accused, prior to the offer's expiration, and defense counsel's failure to inform a defendant of a written plea offer before it expired satisfies the deficient performance prong of the Strickland standard. See Frye, 132 S.Ct. at 1409. The Court further held that to show prejudice from ineffective assistance of counsel where a

plea offer has lapsed or been rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability he would have accepted the earlier plea offer had he been afforded effective assistance of counsel, and he must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. Id.

Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, a court does not need to address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa. See Ward, 592 F.3d at 1163. On this record, Brooks has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. At trial, the defense theory was that Brooks was not the man who sold cocaine to Mike Murphy on April 25, 2007. See Tr. at 15, 106. Moreover, at the evidentiary hearing in May 2011, defense counsel testified that he recalled conveying the State's plea offer to Brooks and that Brooks said that he did not commit the offenses, and therefore, would not accept any offers. See EH Tr. at 40. On this record, Brooks' ineffectiveness claim is without merit since he has not shown deficient performance. Accordingly, Brooks is not entitled to federal habeas relief on ground three.

## D. Ground Four

As ground four, Brooks asserts that counsel was ineffective because he failed to file a motion in limine to exclude testimony on evidence that was not admitted at trial. See Amended Petition at 7. Brooks raised the ineffectiveness claim in his Rule 3.850 motion, as ground four, in state court. Ultimately, after an evidentiary hearing on other issues,[6] the post-conviction court denied the Rule 3.850 motion with respect to this claim, stating in pertinent part:

> The Defendant claims that his trial counsel was ineffective for failing "to timely file a motion in limie [sic] to exclude the [S]tate from introducing testimony evidence of a twenty (20) dollar bill not entered into evidence." Motion at 15. The Defendant essentially argues that his trial counsel should have filed a pre-trial motion in limine which sought to have any mention of a twenty dollar bill prohibited at trial because (1) it was not and could not be admitted into evidence, and (2) its "probative value" was "substantially outweighed by the likelihood of unfair prejudice." Motion at 16. The Defendant, however, fails to establish why it would have been appropriate and necessary for his trial counsel [to] file a motion in limine.
>
> A motion in limine is the proper method to exclude the introduction of prejudicial evidence. A motion in limine seeks to prevent any reference to the offending or prejudicial

---

[6] See Resp. Ex. I at 107-08 ("At this hearing, only Grounds One, Two, Five, and Six were argued as this Court had determined that the remaining four grounds (Three, Four, Seven, and Eight) could be addressed and resolved based upon the record and applicable law.").

evidence during trial. Here, the Defendant
alleges that "the testimony evidence of a
twenty (20) dollar bill" should have been
excluded by way of a timely filed motion in
limine. The Defendant, however, is incorrect.

The Defendant was charged with two drug
offenses. One of the offenses, Count One, was
for the sale or delivery of cocaine. In order
for the State to show that a sale had
occurred, the State would need to establish
(at a minimum) that one party (presumably the
Defendant) possessed cocaine; that another
party (here, the confidential informant)
desired to purchase the cocaine; and that the
two parties made an exchange (often, as here,
cocaine is exchanged for money). In order to
establish that the Defendant committed the
crime of S[ale] or Delivery of Cocaine, the
State was required to delve into the fact that
the Defendant was given a sum of cash by the
confidential informant.[7] The testimony
regarding this sum of cash was certainly
prejudicial to the Defendant - it helped
tremendously to show that the sale had
occurred. However, the probative value of the
evidence outweighed any prejudice. In order
for the State to show that a sale occurred,
it must establish that the Defendant sold the
cocaine to the confidential informant.[8] The
fact that the confidential informant
furnished a sum of money to the Defendant in
exchange for the cocaine he received is highly
probative in this case as it relates directly
to one of the elements of Count One. This
Court is well aware that the twenty dollar
bill that the Defendant refers to was not
admitted as evidence. However, this Court
would like to point out that after the
confidential informant gave the twenty-dollar
bill to the Defendant, the twenty-dollar bill
became the property of the Defendant. The
State was subsequently unable to recover the

---

[7] <u>See</u> Tr. at 119 (court's instructions to the jury).

[8] <u>See</u> Tr. at 118 (court's instructions to the jury).

32

> bill;[9] however, the State and its witnesses
> were certainly permitted to discuss the bill
> even without its admittance into evidence. As
> such, the Defendant's trial counsel was not
> legally obligated to file a motion in limine.
> Furthermore, even if the Defendant's trial
> counsel had filed a motion in limine seeking
> to exclude any testimony or reference to the
> unrecovered twenty-dollar bill, the motion
> would have been denied by this Court. As case
> law has repeatedly held, a defendant's trial
> counsel cannot be found to be ineffective for
> failing to raise a meritless claim. Dailey v.
> State, 965 So.2d 38, 47 (Fla. 2007); Card v.
> State, 498 So.2d 1169 (Fla. 1986). As such,
> Ground Four is accordingly DENIED.

Resp. Ex. I at 115-16 (emphasis deleted). On appeal, the appellate

court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial on the

merits, there are qualifying state court decisions. Thus, the Court

considers the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review

of the record and the applicable law, the Court concludes that the

state courts' adjudications of the claim were not contrary to

clearly established federal law, did not involve an unreasonable

application of clearly established federal law, and were not based

on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Thus, Brooks is

not entitled to relief on the basis of this claim.

---

[9] See Tr. at 34, 37, 39, 40, 50, 55.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Brooks' claim is still without merit. The trial court's conclusion is fully supported by the record. Based on the record in the instant case, counsel's performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel for failing to file a motion in limine to exclude testimony referring to the twenty-dollar bill, Brooks has not shown prejudice. Thus, Brooks' ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice. Accordingly, Brooks is not entitled to federal habeas relief on ground four.

### E. Ground Five

As ground five, Brooks asserts that Florida Statutes sections 893.13 and 893.101 are unconstitutional, and the trial court erred when it sentenced him to a term of incarceration of fifteen years as a habitual felony offender for a "strict liability offense." Amended Petition at 8. Brooks raised the claim in his Rule 3.800 motion in state court. See Resp. Ex. CC at 1-11. On December 12, 2011, the court denied the Rule 3.800 motion with respect to this claim, stating in pertinent part:

> The Defendant argues that a recent federal decision finding section 893.13, Fla. Stat., unconstitutional renders his Columbia County convictions and sentences void.

However, the Defendant's motion is without merit for two reasons: (1) this Court is not bound by the federal decision that the motion relies upon; and (2) this Court is bound by contrary decisions of the Florida District Courts of Appeal.

On July 27, 2011, the United States District Court for the Middle District of Florida, Orlando Division, held that Florida's drug possession and trafficking statute, § 893.13, Fla. Stat., as amended by § 893.101, Fla. Stat., is unconstitutional on its face under the United States Constitution's due process clause because it eliminates the requirement that the State prove that the Defendant had knowledge that the substances she or he possessed or delivered were illegal. Shelton v. Sec'y. Dept. of Corr., No. 6:07-cv-839-Orl-35-KRS, 2011 WL 3236040 (M.D. Fla. July 27, 2011).[10]

The court reasoned that, because a person can be punished for this offense without proof of intent, section 893.13, Fla. Stat. is essentially a strict liability offense, which the court noted are generally disfavored. Further, the court found that the statutory construction does not comply with well-established principles of strict liability offenses for three reasons: (1) the punishment is far too severe (minimum mandatory sentences of up to thirty years and a $100,00[0] fine etc.,) where comparable strict liability offenses are punished typically by a maximum of one to two years); (2) a conviction under the statutes "besmirch[es] a person's reputation," causing a substantial social stigma; and (3) the statute "regulates inherently innocent conduct." Id. The instant petition requests that this Court follow the Shelton decision.

---

[10] Shelton v. Sec'y, Dep't of Corr., 802 F. Supp. 2d 1289 (M.D. Fla. 2011), rev'd, Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348 (11th Cir. 2012), cert. denied, 133 S.Ct. 1856 (2013).

However, this Court is bound by contrary decisions of the Florida District Courts of Appeal. First, the rules of stare decisis do not require the courts of Florida to follow federal district court decisions that construe Florida's substantive law. <u>Bridges v. Williamson</u>, 449 So.2d 400 (Fla. 2d DCA 1984). <u>See</u> <u>also</u> <u>Stonom v. Wainwright</u>, 235 So.2d 545, 547 (Fla. 1st DCA 1970) (of even more importance, it is axiomatic that a decision of a Federal trial court, while persuasive if well reasoned, is not by any means binding on the courts of a state); <u>Mora v. Abraham Chevrolet-Tampa, Inc.</u>, 913 So.2d 32 (Fla. 2d DCA 2005) (In the realm of federal statutory law, decisions of federal circuit courts are persuasive, but state courts are bound only by decisions of the United States Supreme Court).

Second, several District Courts of Appeal, including the First District, have addressed and upheld the constitutionality of section 893.13, Fla. Stat., as amended by section 893.101, Fla. Stat., to eliminate knowledge of the illicit nature of the substances as an element of the offense. <u>Harris v. State</u>, 932 So.2d 551 (Fla. 1st DCA 2006); <u>Burnette v. State</u>, 901 So. 2d 925 (Fla. 2d DCA 2005); <u>Taylor v. State</u>, 929 So.2d 665 (Fla. 3d DCA 2006); <u>Wright v. State</u>, 920 So.2d 21 (Fla. 4th DCA 2005).

Since the <u>Shelton</u> decision, the First District Court of Appeal has reaffirmed its holding that section 893.13, Fla. Stat., as amended by section 893.101, Fla. Stat., is constitutional. <u>See</u> <u>Holmes v. State</u>, 36 Fla. L. Weekly D2222 (Fla. 1st DCA Oct. 6, 2011) ("Appellant asserted that, at the time the initial brief was filed, appellant's counsel was unaware of a constitutional challenge to the drug possession statute raised in <u>Shelton v. Secretary, Department of Corrections</u>, 23 Fla. L. Weekly Fed. D11,_ F.Supp.2d _, 2011 WL 3236040 (M. D. Fla. July 27, 2011). This court previously addressed the very same issue raised in <u>Shelton</u> in <u>Williams v. State</u>, 45 So.3d 14 (Fla. 1st DCA 2010), and upheld the

> drug possession statute as constitutional. Accordingly, we deny the request to provide supplemental briefing on the matter."). Also, on October 14, 2011, the First District again reaffirmed that section 893.13 is constitutional and forcefully rejected the <u>Shelton</u> holding. <u>Flagg v. State</u>, 36 Fla. L. Weekly 02276 (Fla. 1st DCA Oct. 14, 2011).
>
> Therefore, because this Court is not bound by the <u>Shelton</u> decision and, instead, is bound by the contrary decisions of the First District Court of Appeal upholding the constitutionality of section 893.13, Fla. Stat., as amended by section 893.101, Fla. Stat., this Court finds that section 893.101, Fla. Stat. is not unconstitutional. As the statute is not unconstitutional, the Defendant's conviction is not contrary to law.

<u>Id.</u> at 12-14. On Brooks' appeal, the appellate court affirmed the circuit court's denial per curiam on May 4, 2012, <u>see</u> <u>Brooks</u>, 90 So.3d 835; Resp. Ex. FF, and later denied Brooks' motion for rehearing on July 5, 2012, <u>see</u> Resp. Ex. GG.

Assuming the appellate court affirmed the denial on the merits, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. Thus, Brooks is not entitled to relief on the basis of this claim.

Moreover, even assuming that the appellate court did not affirm the denial of the post-conviction motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Brooks' ineffectiveness claim, nevertheless, is without merit. The record fully supports the trial court's conclusion. Brooks' arguments based on <u>Shelton v. Sec'y, Dep't of Corr.</u>, 802 F. Supp. 2d 1289 (M.D. Fla. 2011), are unconvincing. <u>See Shelton v. Sec'y, Dep't of Corr.</u>, 691 F.3d 1348 (11th Cir. 2012) (reversing the district court's decision that Florida's drug statute is unconstitutional for failing to provide a <u>mens</u> <u>rea</u> element; holding that the district court's failure to accord deference to the state court decision violated AEDPA); <u>State v. Adkins</u>, 96 So.3d 412, 423 (Fla. 2012) ("The statutory provisions do not violate any requirement of due process articulated by this Court or the Supreme Court. In the unusual circumstance where a person possesses a controlled substance inadvertently, establishing the affirmative defense available under section 893.101 will preclude the conviction of the defendant."). Accordingly, in light of <u>Shelton</u>, 691 F.3d 1348, Brooks is not entitled to federal habeas relief on ground five.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Brooks seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Brooks "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

39

consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. 9) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.    If Brooks appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of February, 2016.

MARCIA MORALES HOWARD
United States District Judge

sc 2/19
c:
Willie J. Brooks, FDOC #I02657
Counsel of Record